IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MURIEL MARTIN,                    :      CONSOLIDATED UNDER
                                  :      MDL 875
        Plaintiff,                :
                                  :
                                  :
        v.                        :
                                  :
                                  :
AMERICAN EXPORT ISBRANDTSEN,      :
et al.,                           :
                                  :      E.D. Pa. Civil Action No.
        Defendants.               :      2:11-cv-33621-ER


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         October 29, 2015


        This case was transferred in April of 2011 from the
United State District Court for the Northern District of Ohio to
the United States District Court for the Eastern District of
Pennsylvania, where it became part of the consolidated asbestos
products liability multidistrict litigation (MDL 875). The case
was assigned to the Court's maritime docket ("MARDOC").
Plaintiff Muriel Martin ("Plaintiff" or "Mr. Martin") alleges
that he was exposed to asbestos while working aboard various
ships. Plaintiff asserts that he developed an asbestos-related
illness as a result of his exposure to asbestos aboard those
ships.

        For the reasons that follow, the Court will deny
Defendants' motion.

I.    **BACKGROUND**

In 1993, Plaintiff brought claims against various defendants, including various shipowners represented by Thompson Hine LLP ("Defendants" or "the Thompson Hine Shipowners"). By way of Order dated May 2, 1996, Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2]

---

[1]    Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]    On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1-2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to all then-existing and future MARDOC cases. In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

Approximately six years after filing his asbestos action, on February 6, 1999, Plaintiff filed a petition under Chapter 13 in the United States Bankruptcy Court for the Southern District of Alabama. Approximately two months later, a Chapter 13 plan was confirmed, and the bankruptcy case was closed approximately four years later, on May 22, 2003. Shortly thereafter, on July 14, 2003, Plaintiff filed a second petition under Chapter 13 in the same bankruptcy court. Approximately one month later, a Chapter 13 plan was confirmed in that second bankruptcy case, and the case was closed approximately five years later on December 12, 2008. On April 1, 2011 – approximately eight years after the first bankruptcy case was closed, approximately two years after the second bankruptcy case was closed, and approximately eighteen years after Plaintiff first filed his asbestos action – the MDL Court reinstated the asbestos action, which had been dismissed by Judge Weiner in 1996. A summary of this timeline of events is as follows:

- 1993 - Asbestos action filed
- May 2, 1996 - Asbestos action administratively dismissed
- February 6, 1999 - Bankruptcy action filed
- April 2, 1999 – Chapter 13 plan confirmed
- May 22, 2003 - Bankruptcy action closed
- July 14, 2003 – Second Bankruptcy action filed
- August 29, 2003 – Second Chapter 13 plan confirmed
- December 12, 2008 – Second Bankruptcy action closed
- April 1, 2011 - Asbestos action reinstated

Defendants have moved for summary judgment, arguing that (1) Plaintiff's claims are barred by way of judicial estoppel because he failed to disclose the asbestos action as an asset in his bankruptcy filings, and (2) Plaintiff cannot pursue the asbestos action because it is now owned by the bankruptcy estates.

## II.   LEGAL STANDARD

### A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

　　　B.　The Applicable Law

　　　　　The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants

---

[3]　　　"A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)
(Robreno, J.). Therefore, the Court will apply Third Circuit law
in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

### A.   Judicial Estoppel

Defendants contend that Plaintiff's claims are barred
on grounds of judicial estoppel. Specifically, they contend that
Plaintiff took irreconcilably inconsistent positions in his
bankruptcy proceedings and the instant proceeding. Defendants
state that Plaintiff concealed the existence of his asbestos
claims when filing for bankruptcy by not reporting them as
pending or likely claims on Schedule B ("Personal Property"),
while simultaneously asserting such claims in the current and
then-pending asbestos action. They further assert that a finding
of bad faith is warranted because Plaintiff had knowledge of the
asbestos claims at the time that he filed for bankruptcy (each
time) and had a motive to conceal the claims from the Bankruptcy
Court (i.e., to keep any proceeds of the claims while reducing
the amount of assets available for distribution amongst the
creditors - a motive Defendants assert is common to nearly all
debtors in bankruptcy). Finally, Defendants contend that no
lesser remedy is warranted because the sanction of barring the

asbestos claims is necessary to (1) keep Plaintiff from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiff contends that the asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiff contends that he did not take inconsistent positions between his bankruptcy filings and the present asbestos action because at the time of his bankruptcy filings – and throughout the entire duration of that action – his asbestos claims were dismissed, such that he was not required to list them as an asset in his bankruptcy actions. Moreover, Plaintiff argues that even if he should have identified the asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiff asserts that Defendants bear the burden of establishing bad faith, but have no evidence that Plaintiff acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filings. Additionally, Plaintiff suggests that bad faith cannot be proven in light of the fact that the claims were dismissed long before he filed for bankruptcy (either time) and were only reinstated by the MDL Court long after the bankruptcies were closed.

B.   <u>Real Party in Interest/Standing</u>

In the alternative, Defendants contend that Plaintiff has no right to pursue the claims because the claims no longer belong to Plaintiff and instead belong to the bankruptcy trustees. Specifically, Defendants argue that, even though Plaintiff did not report the asbestos claims as assets in the bankruptcy filings, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee(s) can administer the claims.

Defendants also argue that because Plaintiff did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Plaintiff through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy actions have closed, the rights to the asbestos claims did not revert back to Plaintiff upon those closures and instead remain with the trustee(s), such that Plaintiff may not now pursue them.

Plaintiff asserts that, because the asbestos claims were dismissed during the entire pendency of each bankruptcy action, they were never assets of either bankruptcy estate – regardless of whether or not Plaintiff disclosed them. In short,

Plaintiff argues that the bankruptcy estates could not have an asset that was not in existence at the time of the bankruptcy.

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the bankruptcy estate "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case

commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000).

However, in a Chapter 13 case (unlike a Chapter 7 case), the

estate is controlled by the debtor, and not the trustee.

Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1210

n.2 (3d Cir. 1991 (rehearing 1992)) (opinion sur panel

rehearing) (citing 11 U.S.C. §§ 1302-03 and Bankruptcy Rule

2015(c) for the proposition that "Chapter 13 debtors are

empowered to maintain suit even after a bankruptcy trustee has

been appointed in their case: an essential feature of a chapter

13 case is that the debtor retains possession of and may use all

the property of his estate, including his prepetition causes of

action, pending confirmation of his plan"); In re Kay E. Bowker,

245 B.R. 192, 195-200 (D. N.J. 2000) (rejecting argument that

the trustee in a Chapter 13 case is the owner of a pre-petition

cause of action not disclosed by a debtor in his petition and

explaining that this is because, inter alia, "in Chapter 13

proceedings (unlike Chapter 7 proceedings) the creditors'

recovery is drawn from the debtor's earnings, not from the

assets of the bankruptcy estate; it is only the Chapter 13

debtor who stands to gain or lose from efforts to pursue a cause

of action that is an asset of the bankruptcy estate").

Therefore, although it is true that, "[p]ursuant to 11 U.S.C. §

554(d), a cause of action which a debtor fails to schedule,

remains property of the estate because it was not abandoned and

10

not administered," <u>Allston-Wilson v. Philadelphia Newspapers,
Inc.</u>, No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,
2006)(<u>see</u> <u>also</u> <u>In re Kane</u>, 628 F.3d 631, 637 (3d Cir. 2010) ("an
asset must be properly scheduled in order to pass to the debtor
through abandonment under 11 U.S.C. § 554")), because the debtor
remains in control of the estate at all times throughout a
Chapter 13 bankruptcy (even after a trustee is appointed to the
case), and for the reasons set forth in <u>In re Bowker</u>, the issue
of abandonment of an asset by the trustee – and reversion of the
rights to a cause of action – (as arises under 11 U.S.C. § 554
in a Chapter 7 case) does not arise in a Chapter 13 case.

Judicial estoppel is a "doctrine that seeks to prevent
a litigant from asserting a position inconsistent with one that
she has previously asserted in the same or in a previous
proceeding." <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>,
81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and
citations omitted). At the heart of judicial estoppel is the
idea that "absent any good explanation, a party should not be
allowed to gain an advantage by litigation on one theory, and
then seek an inconsistent advantage by pursuing an incompatible
theory." <u>Id.</u> (quoting 18 Charles A. Wright, Arthur R. Miller &
Edward H. Cooper, <u>Federal Practice and Procedure</u> § 4477 (1981),
p. 782). However, this doctrine is "not intended to eliminate
all inconsistencies no matter how slight or inadvertent they may

11

be." Id. It "should only be applied to avoid a miscarriage of

justice" and "is only appropriate when the inconsistent

positions are tantamount to a knowing misrepresentation to or

even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324

(internal quotation marks and citations omitted). The "doctrine

of judicial estoppel does not apply 'when the prior position was

taken because of a good faith mistake rather than as part of a

scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362

(quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir.

1980)). "It is a fact-specific, equitable doctrine, applied at

courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir.

2010).

  The Third Circuit Court of Appeals has formulated this

test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent.
> Second, judicial estoppel is unwarranted unless the
> party changed his or her position "in bad faith –
> i.e., with intent to play fast and loose with the
> court." Finally, a district court may not employ
> judicial estoppel unless it is "tailored to address
> the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's
> misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.

Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.

2001)). The Third Circuit has further concluded that a

"rebuttable inference of bad faith arises when averments in the

pleadings demonstrate both knowledge of a claim and a motive to

conceal that claim in the face of an affirmative duty to

disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at

416-18); Ryan Operations, 81 F.3d at 363. However, the

application of this inference does not arise "from the mere fact

of nondisclosure." Ryan Operations, 81 F.3d at 364. Third

Circuit precedent makes clear that a court should conduct an

individualized factual assessment regarding, inter alia,

knowledge and motive of the debtor surrounding disclosure of

assets in a bankruptcy action. See id. at 363-64 (concluding

that the inference did not apply where the creditors were most

likely unaffected by the failure to disclose, the debtor

received no benefit from its non-disclosure, and that there was

no evidence that the debtor sought to conceal the claims

deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying

estoppel after analyzing the facts regarding knowledge and

motive).

## V.   ANALYSIS

### A.   Judicial Estoppel

Defendants contend that, because the dismissal of

Plaintiff's asbestos claims was merely administrative (such that

the claims could be reinstated by Plaintiff or the MDL Court at

some point in the future), the claims were assets whose omission

from Schedule B of the bankruptcy actions constituted an inconsistent position between the asbestos and bankruptcy lawsuits and creates an inference of bad faith. Plaintiff contends that because the claims had been in a dismissed stage for several years at the time of each bankruptcy filing, they were not in essence assets and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

> i.   Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?

It is undisputed that Plaintiff did not list asbestos claims (or any other legal claims) as assets in his bankruptcy filings. Plaintiff's duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his asbestos claims as an asset in his bankruptcy filings, Plaintiff represented to the Bankruptcy Court that such an asset did not exist. Now, in this Court, Plaintiff is pursing those same claims that he represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

ii.  <u>Step Two: Did Plaintiff Change His Position In Bad Faith</u>

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." <u>See</u> <u>Bartel v. Various Defendants</u>, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[4] While Judge Weiner's orders appear to invite reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, <u>sua</u> <u>sponte</u>, did so <u>en</u> <u>masse</u>. That a layman would have had the foresight to know in either 1999 or 2003 when he filed for Chapter 13 bankruptcy, that many years later, in 2011, a new presiding Judge of the MDL would reopen his asbestos case, albeit almost two decades after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Plaintiff's case - was in a "black hole," uncertain to ever emerge again. <u>See</u> Hon. Eduardo C.

---

[4]       "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." <u>Bartel</u>, 965 F. Supp. 2d at 614.

Robreno, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the failure to disclose the asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[5] Accordingly, the Court does not find that Plaintiff changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[6] Accordingly, Defendant's motion for summary judgment on grounds of judicial estoppel will be denied. See Anderson, 477 U.S. at 248-50.

---

[5]    While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Plaintiff, or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

[6]    Additionally, the Court has reviewed the bankruptcy petitions filed by Plaintiff, see ECF No. 52-2, and concludes that, to the extent the law generally requires disclosures of the type of potential claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

B.    Real Party in Interest/Standing

Defendants next contend that, despite Plaintiff's failure to list the asbestos claims on his bankruptcy petitions, the claims now belong to the bankruptcy trustees (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiff has no right to pursue them. They assert that, because Plaintiff did not properly schedule those claims as assets, the trustees were incapable of passing those claims back to Plaintiff through abandonment of any remaining and unpursued assets as would normally happen pursuant to 11 U.S.C. § 554.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). However, in a Chapter 13 case (unlike a Chapter 7 case), the estate is controlled by the debtor, and not the trustee. Maritime Electric Co., 959 F.2d at 1210 n.2 (opinion sur panel rehearing); In re Kay E. Bowker, 245 B.R. at 195-200. Because the debtor remains in control of the estate at all times throughout a Chapter 13 bankruptcy (even after a trustee is appointed to the case), and for the reasons set forth in In re Bowker, the issue of abandonment of an asset by the trustee – and any accompanying reversion of the rights to a

17

cause of action – (as arises under 11 U.S.C. § 554 in a Chapter
7 case) does not arise in a Chapter 13 case. Nonetheless,
"[p]ursuant to 11 U.S.C. § 554(d), a cause of action which a
debtor fails to schedule, remains property of the estate because
it was . . . not administered," <u>Allston-Wilson v. Philadelphia
Newspapers, Inc.</u>, No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa.
Apr. 20, 2006).

In the instant case, Plaintiff erred by failing to
disclose his administratively dismissed asbestos claims when he
filed his bankruptcy petitions. While the Court has held that
this error was not in bad faith and thus not barred by judicial
estoppel, these claims are nonetheless part of the bankruptcy
estates as they were not only potential claims, but were
realized claims technically held in abeyance by the Court, and
thus needed to be disclosed. Because the bankruptcies were filed
pursuant to Chapter 13 (rather than Chapter 7), it is Plaintiff
(and not either of the bankruptcy cases' trustees) who is the
real party in interest for such claims. Therefore, Mr. Martin is
properly named as the plaintiff in the present action and has
standing to pursue the asbestos claims. However, it is not clear
whether the creditors to the bankruptcy cases recovered in full
on the debts owed by Mr. Martin, pursuant to the Chapter 13
plans that were confirmed in the absence of the trustees' and
creditors' knowledge of the asbestos claims.

18

Having held that the claims belong to the estates and
that, therefore, distributions of any recovery should be made in
accordance with the priorities set forth in the Bankruptcy Code,
the Court must determine the appropriate remedy. In bankruptcy
proceedings, the trustee's position is similar to that of a
fiduciary to both the debtor and creditors. Under the bankruptcy
code, the trustee must "investigate the financial affairs of the
debtor," 11 U.S.C. § 704(a)(4), and "in so doing is bound to be
vigilant and attentive in advancing the estate's interests." In
re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In sum, it is the
trustee's duty to both the debtor and the creditor to realize
from the estate all that is possible for distribution among the
creditors." Id. (citing 4 Collier, Bankruptcy ¶ 704.01 (15th
ed.)). Therefore, although Plaintiff remains in control of the
property of each of the bankruptcy estates, including his
asbestos claims – such that he has standing to pursue those
claims on his own behalf, the trustees in each of the bankruptcy
cases must nonetheless be notified of the claims that were not
disclosed.[7] This is true despite the fact that the bankruptcy

---

[7]      This will, in essence, constitute an amendment to each
of Plaintiff's two initial bankruptcy petitions, which will
allow the trustee and/or creditors to decide whether to seek to
reopen either of the bankruptcy estates. Regardless of whether
or not such reopening is sought, Plaintiff will be permitted to
proceed with his asbestos claims in the present action, as he is
the real party in interest, with ownership of the claims and
standing to pursue them.

actions have long been closed. The Bankruptcy Court for the Southern District of Alabama is the court in the best position to provide the proper parties (including Plaintiff's creditors in each of the bankruptcy cases) with notice of Plaintiff's intent to pursue the instant asbestos claims. See 11 U.S.C. § 554(b). To expedite the process of putting the trustees and the Bankruptcy Court on notice of the claims, the Court will direct the Clerk of this Court to (1) make a copy of this order and the accompanying memorandum and file said copy on the docket of each of Plaintiff's two bankruptcy cases in the Bankruptcy Court for the Southern District of Alabama: (a) (No. 99-bk-10470-WSS), and (b) No. 03-bk-13943-MAM; (2) ascertain the identity of the trustee in each of the two cases; and (3) serve a copy of said order and memorandum upon the trustee for each case at his/her last known address.

Having held that Plaintiff, and not the trustee in either of the bankruptcy cases, is the real party in interest of the instant asbestos claims, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied. Anderson, 477 U.S. at 248-50.

## VI.  CONCLUSION

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.

20